UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————
SAMANTHA ZUCKERMAN, an infant,  )
by her Parent and Natural Guardian  )
ROBERTA ZUCKERMAN,    )
and ROBERTA ZUCKERMAN,   )
        plaintiff,  )   No. 08 Civ. 3913 (NRB) (KNF) ECF
v.            )
            )
CAMP LAUREL,      )
       defendant.  )
—————————————————————)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR
TO DISMISS BECAUSE OF LACK OF PERSONAL JURISDICTION**

# Table of Contents

section                                                                    page

1.    Facts                                                                 1

2.    Argument                                                              4

      a.    The valid and mandatory forum-selection clause in            4
            the contract between the parties requires that this
            case be dismissed.

            1)    Maine law applies to the interpretation of             4
                  the Terms, including to whether the forum
                  clause is enforceable.

            2)    Forum-selection clauses are routinely enforced.        6

            3)    The plaintiffs cannot meet their heavy burden          7
                  of setting aside Camp Laurel's forum clause.

      b.    Ms. Zuckerman's signing the enrollment form                 11
            containing the forum clause binds her daughter,
            Samantha.

3.    If the Court determines that transfer, as opposed to dismissal,    12
      is appropriate, Camp Laurel requests the Court to transfer
      this matter to the United States District Court for
      the District of Maine.

4.    In the alternative, Camp Laurel, moves for dismissal               13
      of all claims asserted against it for lack of personal jurisdiction.

5.    Conclusion                                                         18

The defendant, Coastal Camps, Inc., d/b/a Camp Laurel,[1] moves to dismiss this action on the grounds of improper venue under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a) or, in the alternative, to transfer the action to the United States District Court for the District of Maine under 28 U.S.C. § 1404(a) or § 1406(a), because the contract between Camp Laurel and the plaintiffs contains a fully enforceable forum-selection clause requiring that any lawsuit against Camp Laurel be filed only in a court in Maine, where Camp Laurel is located. In the alternative, Camp Laurel requests that the case be dismissed under Fed. R. Civ. P. 12(b)(2) because it has insufficient contacts with New York to be subject to personal jurisdiction here.[2]

## 1. Facts

The plaintiffs allege that the plaintiff Samantha Zuckerman was injured on or about July 30, 2006 while taking a horseback-riding class when she was attending Camp Laurel in Mt. Vernon, Maine. Verified Complaint ¶¶ 7-14.[3] They allege that while Samantha was riding, the saddle slipped, causing her to fall from the horse. *Id.* ¶ 17. Her mother, Roberta Zuckerman, sues Camp Laurel on her own behalf and on behalf of Samantha.

At all relevant times, Coastal Camps, Inc., d/b/a Camp Laurel, has been a corporation under the laws of Maine, with its principal place of business at 1218 Pond Road, Mt. Vernon, Maine, where it operates its summer camp. Declaration of Keith M. Klein in Support of Defendant's Motion to Dismiss ¶ 4. It has a winter office at 145 County Road, Cresskill, New

---

[1]The plaintiffs have sued Coastal Camps, Inc., d/b/a Camp Laurel, incorrectly as "Camp Laurel."

[2]Camp Laurel does not submit itself to the jurisdiction of this court by filing the instant motion.

[3]The Verified Complaint was filed on or about March 11, 2008 in New York Supreme Court for New York County. Camp Laurel was served with the Verified Complaint on or about March 28, 2008 and filed a Notice of Removal timely, on April 25, 2008.

Jersey, through which prospective campers or their parents can make inquiries and bookings.  *Id.*

Ms. Zuckerman Camp Laurel has no office within the State of New York.  *Id.*

On or about September 19, 2005, Ms. Zuckerman booked Samantha for Camp Laurel for

the summer of 2006 by filling out and signing a simple one-page form entitled "Camp

Laurel–2006 Re-Enrollment" and sending it by facsimile to Camp Laurel's New Jersey office.

*Id.* ¶ 5.[4]  A copy of the signed form is attached to the Klein Declaration as Exhibit A.  It states

Camp Laurel's contractual terms:

> **TERMS:**
> . . . .
> I understand that part of the camping experience involves activities and group
> living arrangements that may be new to my child, and that they come with certain
> risks and uncertainties beyond what my child may be used to dealing with at
> home.  I am aware of these risks and am assuming them on behalf of my child.  I
> realize that no environment is risk-free, and I have instructed my child on the
> importance of abiding by the camp's rules, and my child and I both agree that he
> or she is familiar with these rules and will obey them.  My child has permission to
> participate in all camp programs, camp trips and special outings planned and
> supervised by Camp Laurel.
>
> It is agreed that <u>any dispute or cause of action between the parties, whether out of
> this agreement or otherwise, can only be brought in a court of competent
> jurisdiction located in Kennebec County, Maine and shall be construed in
> accordance with the laws of Maine.</u>
> . . . .
> I have read and agree to the terms outlined above.
>
> **Parent Signature** *(required):* _____ **Date:** _____

*Id.* & Exh. A to it (underlining added).

This re-enrollment form contained the same forum clause specifying that Maine would be

the sole forum for any lawsuit against Camp Laurel and that Maine law would apply as the re-

---

[4]Samantha's stay began on June 24, 2006 and was scheduled to end on August 12, 2006.  *Id.*
Samantha had attended Camp Laurel the three previous summers, 2003, 2004, and 2005.  *Id.* ¶ 6.

2

enrollment form Ms. Zuckerman had signed when she enrolled Samantha for the previous summer, 2005. *Id.* ¶ 6 & Exh. B to it.

Camp Laurel requires that lawsuits against it be filed in Maine because its principal place of business is the camp, located in Mt. Vernon, Kennebec County, Maine. *Id.* ¶ 7. To be able to minimize the cost of camp stays such as the one the plaintiffs bought, Camp Laurel must keep its own costs low. *Id.* Its administrators, counselors, instructors, and campers reside throughout the country. *Id.* Campers come from many states--Massachusetts, Illinois, Pennsylvania, Maryland, Washington, D.C., Virginia, New Jersey, New York, and Florida--but all have Maine in common because of their attendance at the camp. *Id.* Most of Camp Laurel's staff persons, such as cooks and maintenance persons, live near the camp in Maine, as do providers of other services, such as the owner of the horse and the saddle at issue. *Id.* By requiring lawsuits against Camp Laurel to be filed in Maine and to be governed by Maine law, Camp Laurel hopes to be able to predict the outcome of lawsuits and to achieve uniform results so that it can plan its business accordingly. In addition, it hopes to minimize the time any officers and employees of Camp Laurel must be away from its office to take part in any legal proceedings. *Id.* In summer especially, it cannot afford to have camp administrators, counselors, and instructors leave the camp grounds for any extended period of time. *Id.* Other administrators and Keith Klein live at the camp from about June 1 to August 20 each year. *Id.*[5]

_____

[5]Campers begin arriving June 26 and leave about August 14 each summer. *Id.*

3

2. **Argument**

    a.    **The valid and mandatory forum-selection clause in the contract between the parties requires that this case be dismissed.**

The contract states unequivocally that any dispute between the parties "can only be brought in a court of competent jurisdiction located in Kennebec County, Maine and shall be construed in accordance with the laws of Maine." Klein Decl. ¶ 5 & Exh. A to it. Ms. Zuckerman signed the terms just below a line stating, "I have read and agree to the terms outlined above." *Id.* & Exh. A to it.[6]

    1)    **Maine law applies to the interpretation of the Terms, including to whether the forum clause is enforceable.**

The Terms state that contract is governed by the laws of Maine. Traditionally, a federal court sitting in diversity applies federal common law to the question of the enforceability of a forum-selection clause, whether the issue is a motion to dismiss for improper venue based upon a forum-selection clause, see Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007); Jones v. Weinbrecht, 901 F.2d 17, 18-19 (2d Cir. 1990), or a motion to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) based on a forum clause. See id.; Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 32, 108 S. Ct. 2239, 2245, 101 L. Ed. 2d 22, 33 (1988) (discussing law applying to § 1404(a) transfers).

---

    [6]Whether Ms. Zuckerman actually read the Terms governing the trip is irrelevant. She signed the Terms just below a line stating that she read and agreed to them, so the Court should presume she read them. And if she now states that she in fact failed to read the Terms, her claim would not avail her. As Judge Cardozo stated, "The passenger who omits to read takes the risk of omission." Murray v. Cunard Steamship Co., 235 N.Y. 162, 166, 139 N.E. 226, 228 (1923). See also Marek v. Marpan Two, Inc., 817 F.2d 242, 246 (3d Cir.), cert. denied, 484 U.S. 852 (1987) (plaintiff's possession of ticket folder was sufficient to charge her with notice of its provisions); Sarmiento v. BMG Entertainment, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003) ("The opportunity to read a clearly identified and intelligible forum selection clause before accepting the contract provides sufficient notice to the plaintiff.").

The Second Circuit, however, has recently stated that where there is a choice of law clause as well as a forum clause, the interpretation of the forum clause should be governed by the law chosen to govern the interpretation of the contract as a whole.  <u>Phillips</u>, 494 F.3d at 386 (citing <u>Yavuz v. 61 MM, Ltd.</u>, 465 F.3d 418, 427-31 (10th Cir. 2006)).

Accordingly, Maine law governs analysis of whether the forum clause is enforceable. As a practical matter, however, the choice of law issues is irrelevant because forum clauses are routinely enforced under federal common law and by federal and state courts in Maine.  In fact, Maine courts, like courts throughout the country, follow the analysis in <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585, 595 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ("<u>Shute</u>"), and <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10, 92 S. Ct. 1907, 1917, 32 L. Ed. 2d 513 (1972).  <u>See, e.g.</u>, <u>Nelson v. CGU Ins. Co. of Canada</u>, 2003 U.S. Dist. LEXIS 5924, *5-*9  (D. Me. Apr. 10, 2003) (Magistrate's Recommendation), *accepted by judge*, 2003 U.S. Dist. LEXIS 7642 (D. Me. May 3, 2003); <u>Clean Harbors Envtl. Servs. v. James</u>, 2006 Me. Super. LEXIS 263, *2-*5 (Me. Super. Ct., Cumberland Co. Dec. 12, 2006); <u>HLC Financial Inc. v. Dave Gould Ford Lincoln Mercury, Inc.</u>, 2003 Me. Super. LEXIS 200, *2-*3 (Me. Super. Ct., Cumberland Co. Sept. 24, 2003).  And, as this Court has stated, the Second Circuit has a "'strong policy' of enforcing forum selection agreements."  <u>TSR Silicon Resources, Inc. v. Broadway Com Corp.</u>, 2007 U.S. Dist. LEXIS 9212, *15 (S.D.N.Y. Dec. 14, 2007) (Buchwald, J.) (enforcing a forum clause). <u>See, e.g.</u>, <u>Effron v. Sun Line Cruises, Inc.</u>, 67 F.3d 7, 9 (2d. Cir. 1995); <u>Jones</u>, 901 F.2d at 18 (<u>Bremen</u> standard applies to diversity cases); <u>Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.</u>, 838 F.2d 656, 659 (2d Cir. 1988); <u>TSR Silicon Resources, Inc. v. Broadway Com Corp.</u>, 2007 U.S. Dist. LEXIS 9212, *14-*16 (S.D.N.Y. Dec. 14, 2007) (Buchwald, J.);

5

Valenti v. Norwegian Cruise Line, 2005 U.S. Dist. LEXIS 6811 (S.D.N.Y. Apr. 21, 2005);

National School Reporting Servs., Inc. v. National Schools of California, Ltd., 924 F. Supp. 21,

24 (S.D.N.Y. 1996); Generale Bank, New York Branch v. Choudhery, 779 F. Supp. 303, 305-06

(S.D.N.Y. 1991).

### 2)  **Forum-selection clauses are routinely enforced.**

Forum-selection clauses are *prima facie* valid.  Shute, 499 U.S. at 589, 111 S. Ct. at 1528;

The Bremen, 407 U.S. at 10, 92 S. Ct. at 1917; Nelson v. CGU Ins. Co. of Canada, 2003 U.S.

Dist. LEXIS 5924, *5 & *6 n.2  (D. Me. Apr. 10, 2003) (Magistrate's Recommendation)

(adopting federal standard in absence of precedent by Maine Law Court or guidance from Maine

Legislature), *accepted by judge*, 2003 U.S. Dist. LEXIS 7642 (D. Me. May 3, 2003); Phillips,

494 F.3d at 386.

Contractual forum clauses "should be enforced unless they are the product of fraud of

overreaching or unless enforcement would be unreasonable or unfair or would contravene a

strong public policy of the forum."  Nelson, 2003 U.S. Dist. LEXIS, *6.

Camp Laurel's forum clause was reasonably communicated to them because Ms.

Zuckerman signed Camp Laurel's enrollment form just under a line stating that she had read the

Terms and agreed to them, Klein Decl. ¶ 5 & Exh. A to it, and she signed the same form

containing the same forum clause the previous year.  *Id.* ¶ 6 & Exh. B to it.  The clause is in the

Terms, which take up one-quarter of the simple, one-page enrollment form.  The clause is

mandatory because it states "any dispute . . . can only be brought in a court . . . located in

Kennebec County, Maine."  See Nelson, 2003 U.S. Dist. LEXIS 5924, **4-*5 (finding

mandatory and enforcing the clause "[i]ssues [of liability and damages] shall be determined . . .

6

by the Supreme Court of Nova Scotia"); Phillips, 494 F.3d at 386 (holding that a weaker phrase, "are to be brought [in England," was mandatory); TSR Silicon, 2007 U.S. Dist. LEXIS 92121 (holding "any dispute . . . will only be entertained within the jurisdiction of the Los Angeles County court system" was enforceable).  And there can be no reasonable dispute that this clause covers the parties since it was in the enrollment form for Camp Laurel, clearly relates to camping (including because it follows an assumption of the risk provision that refers to the "camping experience" and mentions the risks of camping), and was required to be signed by the camper's parent.

Hence, the clause is presumptively valid, and the plaintiffs have the burden of showing that it should not be enforced because enforcement would be unreasonable or unjust, or because it was obtained through fraud or overreaching.  Nelson, 2003 U.S. Dist. LEXIS 5924, *6; Phillips, 494 F.3d at 383-84; Effron, 67 F.3d at 9; Jones, 901 F.2d at 18; TSR Silicon, 2007 U.S. Dist. LEXIS 9212, *15.  "[T]he party resisting enforcement is required to demonstrate exceptional facts justifying relief from its contractual duty." TSR Silicon, 2007 U.S. Dist. LEXIS 9212, *15.

### 3)    The plaintiffs cannot meet their heavy burden of setting aside Camp Laurel's forum clause.

In regularly enforcing forum clauses, courts in Maine, like courts in New York and elsewhere, follow the Supreme Court's analysis in Shute and the case that Shute followed in part, The Bremen.  Shute is dispositive of this motion.  In Shute, cruise passengers sued a cruise line in Washington, where they resided, even though their pre-printed cruise ticket contained a forum clause requiring that lawsuits against the cruise line be filed in Florida.  The Supreme Court held that forum clauses of this type are enforceable, even though they appear in pre-printed tickets and

7

brochures and obviously were not the product of bargaining between a cruise provider and a

participant.  499 U.S. at 593, 111 S. Ct. at 1527, 113 L. Ed. 2d at 631-32.  The Court discussed

why forum clauses even in form contracts are reasonable and should be enforced:

> First, a cruise line has a special interest in limiting the fora in which it
> potentially could be subject to suit.  Because a cruise ship typically carries
> passengers from many locales, it is not unlikely that a mishap on a cruise could
> subject the cruise line to litigation in several different fora.  Additionally, a clause
> establishing *ex ante* the forum for dispute resolution has the salutary effect of
> dispelling any confusion about where suits arising from the contract must be
> brought and defended, sparing litigants the time and expense of pretrial motions to
> determine the correct forum, and conserving judicial resources that otherwise
> would be devoted to deciding those motions.  Finally, it stands to reason that
> passengers who purchase tickets containing a forum clause like that at issue in this
> case benefit in the form of reduced fares reflecting the savings that the cruise line
> enjoys by limiting the fora in which it may be sued.

499 U.S. at 593-94, 111 S. Ct. at 1527-28, 113 L. Ed. 2d 632.  See also Effron v. Sun Line

Cruises, Inc., 67 F.3d 7, 10 (2d. Cir. 1995) (quoting these lines with approval).

The Supreme Court's reasoning applies equally to Camp Laurel, which contracts with

parents throughout the country.  Klein Decl. ¶ 7.  It is potentially subject to suit in many

jurisdictions, depending upon the residence of the camper.

Nor can the plaintiffs sensibly argue that Camp Laurel's forum clause is unreasonable or

unjust as applied to them.  The forum clause was in a short set of Terms on a simple one-page

form.  *Id.* ¶ 5 & Exh. A to it..  Ms. Zuckerman signed the enrollment form at issue right below a

line stating, "I have read and agree to the terms outlined above."  *Id.* & Exh. A to it.  She had

signed the same form containing the same forum clause when she applied for camp for Samantha

the year before.  *Id.* ¶ 6 & Exh. B to it.  The plaintiffs have a "heavy burden" of proof of showing

that the forum clause would be unjust because it would be seriously inconvenient for them to

travel to Maine.  Shute, 499 U.S. at 595 (quoting The Bremen, 407 U.S. at 17).  Since Camp

Laurel's principal place of business is in Mt. Vernon, Maine, and Camp Laurel could reasonably predict that key witnesses and key evidence relating to tort claims against it might be located at the camp, Maine is certainly not a "remote alien forum." See Shute, 499 U.S. at 594-95.[7]  Indeed, Samantha had traveled there for the summer of the accident, 2006, and each of the three preceding years.  Klein Decl. ¶ 10.  Each year, her parents had visited her on Visiting Day, which is the third Saturday in July.  Id.  See Effron, 67 F.3d at 11 (plaintiff cannot reasonably complain the expense or inconvenience of having to travel to specified forum, Greece, since her alleged injury occurred during an expensive foreign vacation)

To require the parties to litigate in Maine would not prevent the accomplishment of substantial justice or deprive the plaintiffs of their day in court.  A forum is not unreasonable merely because it would be less inconvenient or more expensive than litigation in the forum the plaintiffs prefer.  See Effron, 67 F.3d at 11 (upholding forum clause requiring plaintiff to sue in Greece even though she stated that she was 74 years old, partially disabled, afraid to stay in a strange city, ignorant of the Greek legal system, unable to afford to litigate in Greece, and unable to afford to pay witnesses to travel to Greece).

The plaintiffs have not alleged, and cannot reasonably allege, that Camp Laurel obtained Ms. Zuckerman's signature on the enrollment form by fraud or overreaching.  Samantha certainly was not compelled to book summer camp, and Ms. Zuckerman and she possessed the enrollment form containing the Terms before Ms. Zuckerman called Camp Laurel to book the camp stay.  Ms. Zuckerman could have rejected the forum clause and the rest of the Terms with impunity.

---

[7]In fact, courts routinely enforce forum clauses specifying a forum in a foreign country.  See, e.g., Effron, 67 F.3d at 9 (in action by passenger injured on cruise ship, enforcing forum clause specifying Greece as forum).

Shute, 499 U.S. at 595.  Instead, she signed her name right below a line stating that she had read the Terms and agreed to them, and she had signed the same form containing the same forum clause the year before.  See National School Reporting Servs., Inc, 924 F. Supp. at 24 (rejecting claim of fraud, overreaching, or duress where defendants had twice before agreed to a forum clause specifying the same forum in other documents between the plaintiff and them).

Finally, there is no basis for holding that enforcement of a forum clause in a contract pertaining to a camp in Maine violates any public policy of Maine (or any other state).  Maine courts enforce forum clauses, just as courts in New York and throughout the rest of the country do.  Nelson v. CGU Ins. Co. of Canada, 2003 U.S. Dist. LEXIS 5924, *8-*11 (D. Me. Apr. 10, 2003) (Magistrate's Recommendation), accepted by judge, 2003 U.S. Dist. LEXIS 7642 (D. Me. May 3, 2003) (rejecting argument that enforcement of forum clause would undermine a public policy of Maine); Clean Harbors Envtl. Servs. v. James, 2006 Me. Super. LEXIS 263, *2-*5 (Me. Super. Ct., Cumberland Co. Dec. 12, 2006); HLC Financial Inc. v. Dave Gould Ford Lincoln Mercury, Inc., 2003 Me. Super. LEXIS 200, *2-*3 (Me. Super. Ct., Cumberland Co. Sept. 24, 2003).  See also Effron, 67 F.3d at 9; Jones, 901 F.2d at 18; Karl Koch Erecting Co. v. New York Convention Center Dev. Corp., 838 F.2d 656, 659 (2d Cir. 1988); TSR Silicon, 2007 U.S. Dist. LEXIS 9212, *15.[8]

Camp Laurel's forum clause should be enforced.  Because the clause specifies Maine as the sole forum for any action against Camp Laurel, New York is an inappropriate forum for this action, and the case must be dismissed.

---

[8]Nor could the plaintiffs argue that Camp Laurel's forum clause violate the public policy of New York since this state strongly favors the enforcement of forum clauses.  Brooke Group Ltd. v. JCH Syndicate 488, 640 N.Y.S.2d 479, 481, 87 N.Y.2d 530, 534, 663 N.E.2d 635 (1996).

**b.    Ms. Zuckerman's signing the enrollment form containing the forum clause <u>binds her daughter, Samantha.</u>**

We anticipate that the plaintiffs may argue that in signing Camp Laurel's contract containing the forum and choice of law clauses, Ms. Zuckerman could not waive the rights of Samantha.  That argument is erroneous.  First, Ms. Zuckerman, an adult, is a plaintiff in this case.  Moreover, case law is consistent that parents can sign forum clauses (or arbitration clauses) and bind their minor children because in agreeing to a forum, to a choice of law, or to arbitration, a parent is not waiving a substantive right of the child.

Indeed, courts routinely enforce forum clauses against minors.  <u>See, e.g.</u>, <u>Morrow v. Norwegian Cruise Line Ltd.</u>, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002) (minor cannot accept the benefits under a contract, such as taking a cruise, and then seek to avoid the obligations, namely, being required to sue in the designated forum); <u>Paster v. Putney Student Travel, Inc.</u>, 1999 U.S. Dist. LEXIS 9194, 1999 WL 1074120, *2 (C.D. Cal. June 7, 1999) (same); <u>Harden v. American Airlines</u>, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (same; granting cruise line's motion to dismiss on basis of forum clause); <u>Premier Cruise Lines, Ltd. v. Superior Court of Los Angeles Co.</u>, 1997 AMC 2797, 2809 (Cal. App. 2d Dist.  Dec. 12, 1996) (same).  <u>See also</u> <u>Ignieri v. Carnival Corp.</u>, 1996 U.S. Dist. LEXIS 22484, 1996 WL 68536, *3 (E.D.N.Y. 1996) ("[a] minor is not relieved from compliance with the lawful terms of a passage contract.").

In fact, the <u>Morrow</u> court noted, "This Court has not found even one [case] where a court refused to enforce a forum selection clause solely because the plaintiff was a minor."  262 F. Supp. 2d at 476.

And in numerous other cases that use reasoning that applies to forum clauses as well, courts hold that a parent's agreement to an arbitration clause is binding on a child because

11

arbitration clauses do not waive a <u>substantive</u> right.[9]  <u>See, e.g.</u>, <u>Global Travel Mktg., Inc. v. Shea</u>,

908 So. 2d 392, 403 (Fla. 2005) (distinction between waiving forum in which claim is presented

in favor of arbitration and complete waiver of legal claim "is a crucial consideration in

determining whether state's interest in protecting children renders the waiver unenforceable");

<u>Hojnowski v. Vans Skate Park</u>, 187 N.J. 323, 343, 901 A.2d 381, 392-93 (2006) (same); <u>Leong</u>

<u>v. Kaiser Found. Hosps.</u>, 71 Haw. 240, 788 P.2d 164, 169 (1990) (same); <u>Doyle v. Giuliucci</u>, 62

Cal. 2d 606, 401 P.2d 1, 3, 43 Cal. Rptr. 697 (1965) (arbitration clause "is a reasonable

restriction, for it does no more than specify a forum for the settlement of disputes"); <u>Cross v.</u>

<u>Carnes</u>, 132 Ohio App. 3d 157, 724 N.E.2d 828, 836 (1998)(parent's consent to arbitration

specifies only the forum for resolution of the child's claim; it does not extinguish the claim).

**3.      If the Court determines that transfer, as opposed to dismissal, is appropriate, Camp
         Laurel requests the Court to transfer this matter to the United States District Court
         <u>for the District of Maine</u>.**

Camp Laurel's forum clause makes dismissal appropriate under Fed. R. Civ. P. 12(b)(3)

and 28 U.S.C. § 1406(a).[10]  But if the Court determines that the interests of justice suggest that

transfer is warranted rather than outright dismissal, Camp Laurel would accept a transfer to the

---

[9]The question of forum obviously is procedural rather than substantive.  <u>Jones</u>, 901 F.2d at 19.

[10]"The district court of a district in which a case is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

If the Court dismisses this action, Camp Laurel consents to waiving any Statute of Limitations defenses it might have asserted in order to allow the plaintiffs time to file their case in Maine so long as the plaintiffs file any lawsuit in that court within the longer of the time the Maine Statute of Limitations allows or 365 days of the date of entry of the Court's order relating to Camp Laurel's motion to dismiss or, in the alternative, to transfer under 28 U.S.C. § 1401(a).  Klein Decl. ¶ 14.

United States District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a)[11] or §

1406(a).  Klein Decl. ¶ 13.

**4.     In the alternative, Camp Laurel, moves for dismissal of all claims asserted against it for lack of personal jurisdiction.**

Alternatively, the Court should dismiss this action under Rule 12(b)(2).  Camp Laurel is

not subject to personal jurisdiction in New York because it has no contacts with New York

relating to the claims alleged in the Verified Complaint, and because it is not otherwise subject to

the Court's general jurisdiction.

Camp Laurel is a Maine corporation and has its principal place of business in Mt.

Vernon, Maine, where it operates the camp.  Klein Decl. ¶ 11.  It has never had any office, place

of business, or mailing address in New York, any officers, directors, or employees who reside in

New York, or any assets or bank accounts in New York.  *Id.*   It has never owned or leased real

estate in New York.  *Id.*  It has never been licensed, registered, or authorized to do business in

New York, and has never had an agent authorized to accept service of process within New York.

*Id.*  It has never paid income or real estate taxes to the State of New York.  *Id.*  It has never had a

telephone number, mailing address, or post office box in New York, although it does have a

national 800-number.  *Id.*  Camp Laurel has never sent mass mailings to New York or any other

state.  *Id.*  Camp Laurel has never accepted reservations in New York.  *Id.*  It has never had an

agent in New York who can make binding commitments on behalf of Camp Laurel to accept a

camper.  *Id.*  It does mail brochures and DVDs by direct mail to its previous campers, to persons

referred by previous campers, and in response to requests.  *Id.*  Some of these mailings are to

---

[11]"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

New York.  *Id.*  Campers make bookings by calling or faxing Camp Laurel in New Jersey.  *Id.*
Some of Camp Laurel's campers reside in New York.  *Id.*

An employee of Camp Laurel visited the Zuckermans in New York on September 19,
2002, before Samantha's first year at the camp (the summer of 2003).  *Id.* ¶ 12.  The
Zuckermans had already sent their application to Camp Laurel's office, on August 16, 2002.  *Id.*
The visit was for describing to Samantha and her parents what the next summer's camping
experience would entail.  No representative of Camp Laurel visited the Zuckermans after the
initial visit.  *Id.*  The accident at issue occurred during the fourth summer she attended the camp.
*Id.*  Clearly, the accident did not arise from the alleged solicitation of business in New York
before Samantha's first summer at Camp Laurel.  The Zuckermans made their own choice as to
whether to enroll Samantha at Camp Laurel for each of the four summers she camped there.  *Id.*

In any event, this visit, as a matter of law, is inadequate to confer jurisdiction on New
York.  Courts routinely grant motions to dismiss for lack of jurisdiction by out-of-state providers
of recreational activities, including summer camps, for deaths or injuries suffered on their
premises even if the provider sent promotional materials to prospective clients in New York,
advertised in New York, and sent employees to New York to attend fairs and other promotional
events or to meet with clients.  See, e.g., Okin v. Jiminy Peak, Inc., 1995 U.S. Dist. LEXIS 4040
(E.D.N.Y. Feb. 28, 1995); Ross v. Colorado Outward Bound School, Inc., 603 F. Supp. 306
(W.D.N.Y. 1985); Diskin v. Starck, 538 F. Supp. 877 (E.D.N.Y. 1982); Wisselman v. Mount
Snow Ltd., 524 F. Supp. 78 (E.D.N.Y. 1982); Sedig v. Okemo Mountain, 205 A.D.2d 709, 612
N.Y.S.2d 643 (2d Dep't 1994).

14

These cases hold that C.P.L.R. § 302, the section upon which the Zuckermans rely,[12] does not apply to an out-of-state injury because the action does not "arise from" the types of contacts on which plaintiffs rely–advertising, other solicitation, or promotional visits to New York.

The court in Diskin v. Starck noted that this principle applies to cases like our case involving New York plaintiffs injured in recreational activities in other states:

> The courts in New York consistently have held that injuries sustained while participating outside the state in recreational activities advertised and contracted for within the state, bear too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the state to warrant a conclusion that the injuries arose from the in-state activity. . . .

538 F. Supp. 877, 880 (E.D.N.Y. 1982) (citations omitted).[13]

Using this reasoning, courts grant motions to dismiss for lack of personal jurisdiction even when the provider of recreational services had greater contacts with New York than Camp Laurel had.  Okin v. Jiminy Peak, Inc., 1995 U.S. Dist. LEXIS 4040 (E.D.N.Y. Feb. 28, 1995), and Wisselman v. Mount Snow Ltd., 524 F. Supp. 78 (E.D.N.Y. 1982), are two examples.

The plaintiff in Okin alleged he had been injured while skiing at a ski resort in Massachusetts.  The resort owned land in New York; sold coupons in New York ski shops that

---

[12]See their May 1, 2008 letter to the Court opposing Camp Laurel's request to file this motion. The sole allegations in the Verified Complaint that remotely bear on jurisdiction are that Camp Laurel "was authorized to do business within the State of New York" (¶ 2) and "[P]rior thereto [to Samantha's attendance at the camp on July 30, 2006], the defendant did actively solicit within the State of New York potential campers and in particular SAMANTHA ZUCKERMAN." (¶ 6).

[13]The plaintiffs in Diskin v. Starck alleged that their two sons had been sexually assaulted at a riding camp in Vermont.  The court held that the camp's contacts with New York were insufficient for jurisdiction over the camp under C.P.L.R. § 301, § 302(a)(1), and §  302(a)(3).  The camp advertised in an annual supplement to a New York publication; sent brochures to the plaintiffs at their request after they saw the ad; contracted with them over the telephone and through the mail to accept the boys at the camp; and instructed the parents to take there children to a location in New Jersey to meet the camp bus. 538 F. Supp. at 880.  The court granted the camp's motion to dismiss, although it offered the plaintiffs the option of agreeing to a transfer to the District of Vermont. Id. at 881.

could be redeemed for tickets at the resort, advertised on New York radio stations and television stations, in print media, and on billboards in New York; mailed promotional literature to groups and persons in New York; distributed brochures here through an independent distribution service; and sent its representatives to New York occasionally for promotional services. Id. at *11. The court ruled that these solicitation efforts were not substantial enough to constitute "doing business" for jurisdiction under § 301 of the long-arm statute, even though they were aimed at attracting New York customers and even though the defendant may have relied on New York customers for a substantial part of its business, because the activities were sporadic and not carried out from a permanent location in the state by its agents or employees in the state. Id. at *13-*14. And it held that it had no jurisdiction over the resort under § 302 because the fact that the plaintiff may have bought a coupon for a lift ticket in New York as a result of being solicited by the resort's advertisements in New York was "too remote from" or did "not bear any relationship to" his injury in Massachusetts. Id. at *18.[14]

In Wisselman, Mrs. Wisselman was injured while taking a ski lesson at Mount Snow resort in Vermont. Mount Snow advertised in New York magazines, newspapers, radio, and television. 524 F. Supp. at 79. Its employees traveled to New York for business purposes, including soliciting business through travel agencies and distributing brochures and films. Id. But, like Camp Laurel, Mount Snow had no office, place of business, bank account, or registered agent in New York, had not filed a certificate of doing business here, and had no agent in New

---

[14]Section 302(a)(3) does not apply because it requires that the injury giving rise to the claim occurred within New York. Okin, 1995 U.S. Dist. LEXIS 4040, *18 n.2; 603 F. Supp. at 306; Diskin, 538 F. Supp. at 879.

York that could make a binding commitment on behalf of the resort.  Id.  In granting the resort's

motion to dismiss for lack of personal jurisdiction, the court held:

> New York courts have consistently held that when no direct relation exists between the wrong sued upon and the business transacted in New York, solicitation and even contractual arrangements for an out-of-State concern do not suffice to justify jurisdiction under § 302. . . .

Id. at 80.  Finding that the plaintiffs had failed to show that their claim arose out of Mount

Snow's business transactions in New York, the court granted the resort's motion to dismiss for

lack of personal jurisdiction.  Id.

Similar is Sedig v. Okemo Mountain, 205 A.D.2d 709, 612 N.Y.S.2d 643 (2d Dep't

1994), in which the plaintiff was injured while skiing at Okemo Mountain in Vermont.  The

court affirmed the grant of a motion to dismiss for lack of personal jurisdiction even though

Okemo solicited business in New York by, among other things, sending posters and brochures to

New York ski shops; sending employees into New York to attend ski shows, selling ski lift

tickets to attendees of ski club meetings in New York, and providing free lift tickets to

employees of New York ski shops.  612 N.Y.S.2d at 644.  The court held that the plaintiff's tort

claim originated in Vermont and was too remote from Okemo's sales and promotional activities

in New York to support long-arm jurisdiction.  Id. at 645.

Accordingly, as a matter of law, Samantha's accident did not arise from any contact

between Camp Laurel and New York, and at any rate Camp Laurel has insufficient contacts with

17

New York to be subject to personal jurisdiction here.[15]  The Court should dismiss this action

under Fed. R. Civ. P. 12(b)(2).

5.  **Conclusion**

Camp Laurel has a clear forum clause in its Terms.  Ms. Zuckerman signed the Terms

under a line stating that she had read and agreed to them.  The plaintiffs' action against Camp

Laurel should be dismissed or, in the alternative, transferred to the United States District Court

for the District of Maine.  In the alternative, this action should be dismissed because Camp

Laurel is not subject to personal jurisdiction in New York.

Dated:  May 14, 2008                          Respectfully submitted,
                                              the defendant,
                                              COASTAL CAMPS, INC., d/b/a CAMP LAUREL,
                                              by its attorneys,


                                              /s/_____
                                              Rodney E. Gould, Esq. (RG-9871)
                                              Email:  rgould@rhglaw.com
                                              Robert C. Mueller, Esq. (RM-1882)
                                              Email:  rmueller@rhglaw.com

---

[15]See generally Callen v. Taylor, 2006 U.S. Dist. LEXIS 43334 (S.D.N.Y. June 27, 2006) (Buchwald, J.); Brown v. Grand Hotel Eden, 2003 U.S. Dist. LEXIS 10983, *16-*18 (S.D.N.Y. June 30, 2003) (Buchwald, J.); Heidle v. Prospect Reef Resort, Ltd., 364 F. Supp. 2d 312, 314 (W.D.N.Y. 2005) (plaintiff injured in fall at hotel in British Virgin Islands; no jurisdiction under § 302 because there was no nexus between the injury and the reservation she made in New York); Miller v. Surf Props., 4 N.Y.2d 475, 480, 151 N.E.2d 874, 176 N.Y.S.2d 318 (1958).

An out-of-state firm's mere solicitation of business in New York and acceptance of reservations from New York are insufficient to subject it to personal jurisdiction here.  Brown, 2002 U.S. Dist. LEXIS 10983, *9-*10; Miller, 4 N.Y.2d at 480, 176 N.Y.S.2d at 321, 151 N.E.2d at 321.  Sending letters to former campers like Samantha inviting them to re-apply for another summer's session is not enough to confer jurisdiction.  "Letters and telephone calls from outside New York . . . are not sufficient to establish personal jurisdiction under CPLR § 302(a)(1) or the due process clause."  Hearst Corp. v. Goldberger, 1997 U.S. Dist. LEXIS 2065, *39 (S.D.N.Y. Feb.. 26, 1997); Brown, 2003 U.S. Dist. LEXIS 10983, *13.  See also Callen, 2006 U.S. Dist. LEXIS 43334, *11, *14 (mail communications from out-of-state party and mere solicitation of business are insufficient to establish jurisdiction).

RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0786
telephone:  (508) 875-5222
facsimile:  (508) 879-6803

--and–


_____
Raymond S. Mastrangelo, Esq. (RM-1327)
Email:  rmastrangelo@moundcotton.com
MOUND COTTON WOLLAN & GREENGRASS
855 Franklin Avenue, Suite 306
Garden City, NY  11530
telephone:  (516) 417-5749
facsimile: (516) 741- 6831

<u>Certificate of Service</u>

I, Rodney E. Gould, counsel for the defendant, hereby certify that on this 14th day of May 2008, I filed through the ECF system the foregoing Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, to Transfer under 28 U.S.C. § 1404(a) or to Dismiss Because of Lack of Personal Jurisdiction, and that I also served it on counsel for the plaintiffs by mailing a copy of it, by U.S. first-class mail, postage prepaid, to their counsel of record:

Allan R. Zaroff, Esq.
Werner, Zaroff, Slotnick, Stern & Ashkenazy PLLP
360 Merrick Road
Lynbrook, NY 11563

/s/_____
Rodney E. Gould

19