UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SAMANTHA ZUCKERMAN, an infant,
By her parent and natural guardian,                    08 Civ. 3913 (NRB)(KNF)
ROBERTA ZUCKERMAN, and ROBERTA
ZUCKERMAN,

                                Plaintiffs,

            -against-

CAMP LAUREL,

                                Defendant.

-----------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 USC § 1404(a)**

Dated: Lynbrook, New York
       June 13, 2008

**WERNER, ZAROFF, SLOTNICK, STERN & ASHKENAZY, LLP**
**360 MERRICK ROAD**
**LYNBROOK, NEW YORK  11563**
**(516) 568-1850**

# TABLE OF CONTENTS

Page

Table of Authorities …………………………………………..    ii

Preliminary Statement …………………………………………...    1

Statement of Facts …………………………………………..…...    2

Argument

    Point I:  The choice-of-law and the forum-selection clauses
    contained in the contract between the parties are invalid under
    New York law …………………………………………..    4

    Point II:  The defendant is subject to personal jurisdiction in
    New York.  Its activities within the State are sufficient to justify
    exercise of jurisdiction ……………………………………    8

    Point III:  Venue and Transfer of Venue:  The Court should
    maintain venue in the Southern District of New York ……………    14

Conclusion ………………………………………………………    15

# TABLE OF AUTHORITIES

Page

### *Cases:*

*Arrowsmith v. United Press International*, 320 F2d 219,
223 (2d Cir. 1963) (en banc) …………………………………….  8

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F2d 194,
197 (2d Cir 1989), *cert. denied,* 498 U.S. 854 (1990) ……………..  8, 9

*Banek v. Yogurt Ventures, USA, Inc.*, 6 F3d 357 (6th Cir 1993) ……  8

*Beacon Enterprises v. Menzies*, 715 F2d 757, 762 (2d Cir.1983) ….  8

*Bialek v. Racal-Milgo, Inc.*, 545 FSupp 25 (SDNY 1982) ………...  13

*Bryant v. Finnish Nat'l Airline*, 15 NY2d 426, 208 N.E.2d 439,
260 N.Y.S.2d 625 (1965) …………………………………………....  9

*Burger King Corp. v. Rudzewicz*, 471 US 462, 105 SCt 2174,
85 LEd2d 528 (1985) ……………………………………………...  11

*Cicalo v. Harrah's Operating Company*, 2008 WL 1847665
(SDNY 2008) …………………………………………………….  15

*Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F3d 151
(2d Cir 1999) ……………………………………………………...  13

*Diskin v. Starck*, 538 FSupp 877 (EDNY 1982) ……………………..  12

*DeLuxe Game Corp. v. Wonder Products Co.*, 166 FSupp 56
(SDNY 1958) …………………………………………………….  15

*Erie v. Tompkins Railroad*, 304 US 64, 58 SCt 817 (1938) ………..  7 fn

*Filippazzo v. Garden State Brickface Co.*, 120 AD2d 663,
502 NYS2d 258 (2nd Dept. 1986) ………………………………...  5, 7

*Fort Knox Music, Inc. v. Baptiste*, 203 F3f 193, 196 (2d Cir 2000) …  13

*Gelfand v. Tanner Motor Tours, Ltd.*, 339 F2d 317, *on remand*,
385 F2d 116 (2d Cir 1967), *cert denied,* 390 US 996,
88 SCt 1198, 20 LE2d 95 (1968) …………………………………..  13

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F2d 55,
(2d Cir 1985) ................................................................. 9

*Intercontinental Planning, Ltd., v. Daystrom, Inc.*,
24 NY2d 372, 300 NYS2d 817, 248 NE2d 576 (1969) ................ 5

*Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*,
918 F2d 1039, 1043 (2d Cir 1990) ...................................... 9, 10

*Laufer v. Ostrow,* 55 NY2d 305, 434 N.E.2d 692,
449 N.Y.S.2d 456 (1982) ................................................ 9

*Lerner v. Karageorgis Lines, Inc,* 66 NY2d 479,
497 NYS2d 894, 488 NE2d 824 (1985) ................................. 7

*Marine Midland Bank, N.A. v. Miller*, 664 F2d 899, 904
(2d Cir. 1981) ............................................................... 8

*Mickle v. Christie's, Inc.*, 214 F.Supp2d 430 (SDNY 2002) ........... 7

*Minnette v. Time Warner*, 997 F2d 1023, 1027 (2nd Cir 1993) ......... 15

*Okin v. Jiminy Peak, Inc.*, 1995 WL 116277 (EDNY 1995) ........... 11

*Oostdyk v. British Air Tours, Ltd.*, 424 FSupp 807 (SDNY 1976) ..... 10

*PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 FSupp2d 176
(EDNY 2004) ................................................................ 15

*Ross v. Colorado Outward Bound School, Inc.*, 603 FSupp 306
(WDNY 1985) .............................................................. 11, 13

*Simonson v. International Bank*, 14 NY2d 281, 200 N.E.2d 427,
251 N.Y.S.2d 433 (1964) ................................................. 9

*Street v. Davis*, 143 Misc2d 983, 985, 542 NYS2d 968,
969 (NY Civ. Ct. 1989) ................................................... 6

*Tauza v. Susquehanna Coal Co.*, 220 NY 259, 115 N.E. 915 (1917) ... 9

*United States v. First Nat'l City Bank*, 379 US 378,
85 SCt 528, 13 LEd2d 365 (1965) ....................................... 8

*Wisselman v. Mount Snow, Ltd.*, 524 FSupp 78 (EDNY 1981) .......... 11, 15

## *Statutes:*

28 USC § 1391(a) ................................................................. 14

28 USC § 1391(c) ................................................................. 14, 15

28 USC § 1404(a) ................................................................ 15

Federal Rule of Civil Procedure 12(b)(2) ........................................ 8

New York McKinneys:

Civil Practice Laws and Rules, Section 301 ................................... 1, 9, 12, 13, 15

Civil Practice Laws and Rules, Section 302[a][1] ........................... 1, 12, 16

Civil Practice Laws and Rules, Section 302[a][3] ........................... 1, 12

Civil Practice Laws and Rules, Section 4544 .............................. 5, 6, 7

## *Other Materials:*

Memorandum of Assemblyman Edward H. Lehner,
1975 Legislative Annual, Ch. 370 ................................................ 7

New York McKinneys Practice Commentaries to § 4544 .................... 6, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SAMANTHA ZUCKERMAN, an infant,
By her parent and natural guardian,                08 Civ. 3913 (NRB)(KNF)
ROBERTA ZUCKERMAN, and ROBERTA
ZUCKERMAN,

                        Plaintiffs,

      -against-

CAMP LAUREL,

                       Defendant.
------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 USC § 1404(a)

***Preliminary statement:***

       Plaintiffs commenced the within action in the Supreme Court of the State of New

York, County of New York to recover for personal injuries sustained during a summer

camp stay in 2006. Defendant, a Maine corporation, removed the action to the within

Court, and now moves pre-answer, to dismiss on grounds of improper venue, or

alternatively, to transfer the action to the United States District Court of the District of

Maine, or alternatively, to dismiss because it has insufficient contacts with New York.

Plaintiffs oppose the requested relief and submit that the choice-of-forum clause

promoted by the defendant is unenforceable under New York law, and that the defendant

is subject to the personal jurisdiction in New York under New York McKinneys Civil

Practice Laws and Rules, Sections 301 and 302[a][1].

1

### Statement of facts[1]:

Samantha Zuckerman, then 12 years old, was injured during a horseback riding class given by and/or at the direction of defendant during her 2003 summer camp stay at the defendant's Camp Laurel in Maine. It is alleged that camp personnel, or the contractors employed by the camp, negligently saddled the horse Samantha was riding, and/or failed to properly tighten, or "cinch", the saddle after she mounted the horse. As a result her fall, Samantha sustained significant and severe injuries, including a tear of the anterior cruciate ligament of her right knee.

Samantha first attended Camp Laurel in the summer of 2003. The Zuckermans chose the defendant's camp based in large part upon the personal involvement of camp directors and personnel. In 2002, a co-director of the camp, Jeremy Sollinger, voluntarily paid a visit to the Zuckerman home in New York, spent hours with the family promoting the camp, discussing the camp experience, the defendant's commitment to safety, as well as ensuring himself that Samantha would be a proper fit for the camp. Many of Samantha's New York friends also attended Camp Laurel, and each of them received a personal visit from Mr. Sollinger, or some other camp director, at their respective homes in New York. It is apparent that the defendant makes it an integral part of its business to travel to New York whenever there is a prospective camper from that state.

Additionally, Camp Laurel travels to New York and takes supervision and charge of its New York resident campers in New York each year at the beginning of the camp year, so that it can oversee and supervise camper transportation to and from New York. With respect to Samantha, this involved either air transport, in which case camp directors

---

[1] Factual allegations set forth in this section are supported by the Declarations of Keith Klein, Roberta Zuckerman and/or Kimberly Carlstrom, each a part of the within motion's record.

2

met with and took charge of Samantha at La Guardia Airport, or by bus transport, in which case, camp directors took charge of Samantha at various New York locations. Similarly, at the conclusion of camp, directors and other personnel returned the campers to New York.

Samantha's mother, Roberta Zuckerman, executed a camp enrollment form in 2002 prior to the 2003 summer camp stay, and thereafter executed a re-enrollment form each succeeding year. The form was provided by the defendant to Mrs. Zuckerman in New York, and contained various pre-printed clauses and terms. It was executed in New York by Mrs. Zuckerman and was faxed by her in New York to the camp's offices in New Jersey. There was no negotiation of terms permitted. A choice-of-law and forum clause is contained in the body of the form, however it is in almost microscopic print. Professional typesetter Kimberly Carlstrom has examined the type size and has concluded that it fails to meet the size requirements for enforcement in New York.

Although the defendant argues that it requires the Maine choice of law and forum clauses in order to minimize business disruption, it is clear this is not the case. Although Maine may be its state of incorporation, the defendant actually operates out of Maine a very few months every year. Most of the year, business is transacted without any Maine involvement. It is therefore unlikely that the camp's business would be interrupted by the within litigation taking place outside of Maine. Most, if not all of the principals of the defendant aren't Maine residents, and the camp hires virtually no Maine counselors. The defendant admits that most of its campers come from a number of Eastern states, yet fails to list Maine as one of those states. If there is one thing that all these campers have in common it is that forcing them to litigate any claim in Maine would be a monumental

3

inconvenience. This is especially true in Samantha's case, where most of her medical testimony must come from New York physicians and health care providers who will be hard pressed to leave their respective practices so as to travel to Maine to give expert testimony. In addition, an eye witness, fellow camper Sophie Cohen, is a Connecticut resident.

By its reliance on certain case law, defendant attempts to liken it to operators of large ski resorts and/or other recreational businesses that promote transient visitors from all states, mostly on one or a few occasions. These operators have little contact with the states of their respective visitors, save for some possible promotional or sales activities. That is a far cry from the substantial and continual activities of the defendant in New York in furtherance of its camp business and activities. These ski resorts or amusement parks do not, as a course of business, conduct interviews with their prospective patrons at their homes, nor do they take charge of their patrons or visitors in their respective home states for transport to their facilities.

### Argument:

#### Point I:  The choice-of-law and the forum-selection clauses contained in the contract between the parties are invalid under New York law.

Defendant argues that Mrs. Zuckerman's execution of the camp's enrollment (or re-enrollment in the case of successive camp years) form constitutes a binding contract between the parties containing an enforceable forum-selection clause and a choice-of-law clause. However, since these contract terms violate substantive New York law, they are unenforceable.

4

As a threshold matter, Mrs. Zuckerman executed the Camp Laurel 2006 re-enrollment form in New York and faxed it to the defendant from New York. As a matter of law, the contract between the parties was made in New York, the jurisdiction where "the last act necessary to make it binding takes place according to the law of contracts". *Intercontinental Planning, Ltd., v. Daystrom, Inc.*, 24 NY2d 372, 300 NYS2d 817, 248 NE2d 576 (1969). Thus the contract's terms, and their construction, are subject to New York law.

New York McKinney's Civil Practice Laws & Rules § 4544 is one of a number of consumer protection statutes. It provides in relevant part:

> The portion of any printed contract or agreement involving a consumer transaction or a lease for space to be occupied for residential purposes where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared. As used in the immediately preceding sentence, the term "consumer transaction" means a transaction wherein the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes. No provision of any contract or agreement waiving the provisions of this section shall be effective. ...

The mission of CPLR § 4544, although phrased in evidentiary terms, is in every real sense substantive; it prevents those who draft certain small or illegibly printed contract clauses from enforcing them. *Filippazzo v. Garden State Brickface Co.*, 120 AD2d 663, 502 NYS2d 258 (2nd Dept. 1986).

As confirmed by professional typesetter Kimberly Carlstrom in her declaration, the choice-of-law and forum terms of the re-enrollment contract are woefully short of the required eight (8) point type. There can be little doubt that the camp enrollment by a

mother of a child involves a transaction "primarily for personal, family or household

purposes". In this regard, the Practice Commentaries to § 4544 are helpful:

> [t]he term "consumer transaction", in the context of CPLR § 4544, should be
> interpreted in accordance with the end sought to be achieved by the statute;
> enabling persons who are least likely to have the ability to alter the terms of form
> contracts to learn exactly what those terms are. As one court put it, since
> consumers cannot truly negotiate contracts drawn by others and presented on a
> take-it-or-leave-it basis, 'they should at least be able to read them!'. *Street v.*
> *Davis*, 143 Misc2d 983, 985, 542 NYS2d 968, 969 (NY Civ. Ct. 1989).
> [Alexander, Practice Commentaries, CPLR § 4544, 2007 Main Volume].

It is anticipated that the defendant will argue against the applicability of CPLR §

4544 for a number of reasons, all of which should be rejected by the Court.

First, it is anticipated that defendant will seek to avoid the salutary effects of

§4544 by arguing that the re-enrollment agreement states that it is to be interpreted under

Maine law, not New York law[2]. Obviously, the Court will see this is as impermissible

"bootstrapping", as the very language that requires the application of Maine law is

unenforceable by virtue of the statute. Without the language, the defendant has no

choice-of-law clause. The statute was designed to protect New York residents who

execute contracts in this State from the unscrupulous conduct of imposing burdensome or

unconscionable contract terms in microscopic print. Further, any attempt to enforce a

contract term that ostensibly seeks to avoid the protections of 4544 must itself be ignored,

since the statute provides, *inter alia*, that "[no] provision of any contract or agreement

waiving the provisions of this section shall be effective".

Secondly, the defendant may argue that a Federal Court sitting on a diversity

basis, need not apply a New York rule of evidence. This argument should also be

rejected. First, there is no specific federal pre-emption statute in issue in the case *sub*

---

[2] This argument was briefly made by defense counsel in a letter to the Court dated May 1, 2008.

*judice*. Thus, it is distinguishable from cases such as *Lerner v. Karageorgis Lines, Inc,* 66 NY2d 479, 497 NYS2d 894, 488 NE2d 824 (1985), where the statute was found to be incapable of nullifying contract terms enforceable under federal maritime law. Furthermore, the statute, while couched in evidentiary terms, is, as early stated, a rule of substance. The plaintiffs are mindful that there is one reported Southern District case, *Mickle v. Christie's, Inc.*, 214 F.Supp2d 430 (SDNY 2002), that has held, in part, that given the evidentiary status of CPLR § 4544, it is inapplicable in federal court. It is respectfully urged that *Mickle* is not controlling herein, or in the alternative, should not be followed. Initially, it is critical to note that Judge Marrero in *Mickle* found that the sale of high-priced artwork by sophisticated purchasers potentially seeking to resell and profit from same, was not the type of transaction "primarily for personal, family or household purposes" contemplated by CPLR § 4544. *supra.,* 214 FSupp at 432. Since the Court determined the statute's inapplicability to the facts of the case, it therefore had no reason to reach the issue whether CPLR § 4544 was available in federal court. Moreover, there can be little doubt that the statute is fundamentally substantive in nature, requiring adherence in federal court under the *Erie* doctrine[3]. Although this statute speaks in terms of the admissibility in evidence of such a contract, the underlying purpose of this 'consumer' legislation is to prevent draftsmen of small, illegibly printed clauses from enforcing them. *Filippazzo v. Garden State Brick Face, ibid, citing* McLaughlin, Practice Commentary, McKinney's Cons. Laws of NY, Book 7B, C 4544. *See also,* Memorandum of Assemblyman Edward H. Lehner, 1975 Legislative Annual, Ch. 370 at p. 39 [Provisions of a contract appearing in small print "should not be enforced by the party who caused the agreement to be printed"].

---

[3] *Erie v. Tompkins Railroad*, 304 US 64, 58 SCt 817 (1938).

In short, the Zuckermans should not be deprived of a substantive New York State consumer protection, simply because the defendant has the ability to remove this case to federal court. To that end, the offending clauses should be unenforceable. *See Banek v. Yogurt Ventures, USA, Inc.*, 6 F3d 357 (6th Cir 1993) ("A choice of law agreement should be upheld unless a 'fundamental state policy' is shown".)

### Point II:   The defendant is subject to personal jurisdiction in New York.  Its activities within the State are sufficient to justify exercise of jurisdiction.

It is well settled that personal jurisdiction in diversity actions depends on the law of the state in which the district court sits. *United States v. First Nat'l City Bank*, 379 US 378, 85 SCt 528, 13 LEd2d 365 (1965); *Arrowsmith v. United Press International*, 320 F2d 219, 223 (2d Cir. 1963) (en banc). The burden of proving personal jurisdiction over a given defendant falls on the plaintiff, and such jurisdiction must be shown by a preponderance of the evidence. *Beacon Enterprises v. Menzies*, 715 F2d 757, 762 (2d Cir.1983). The showing that a plaintiff must make in order to defeat a defendant's claim contesting jurisdiction varies depending on the procedural posture of the litigation. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F2d 194, 197 (2d Cir 1989), *cert. denied,* 498 U.S. 854 (1990). Prior to discovery, plaintiff need only plead in good faith legally sufficient allegations of jurisdiction. *Id.*  In the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Id.* A district court may determine the motion on affidavits alone, or it may permit discovery or conduct an evidentiary hearing on the merits of the motion. *Marine Midland Bank, N.A. v. Miller,*

8

664 F2d 899, 904 (2d Cir. 1981).   When the district court does not hold a hearing or trial on the merits, all pleadings and affidavits must be construed in the light most favorable to the plaintiff, and all doubts are to be resolved in the plaintiff's favor. *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F2d 1039, 1043 (2d Cir 1990).

The defendant is subject to New York personal jurisdiction under two separate New York statutes.   The first, CPLR § 301, provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." The New York courts have construed § 301 as preserving earlier New York case law holding that a foreign corporation is "doing business" and therefore present and subject to jurisdiction in New York with respect to any cause of action, related or unrelated to its New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 NY 259, 115 N.E. 915 (1917); *see also Laufer v. Ostrow,* 55 NY2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982); *Ball v. Metallurgie*, *supra,* 902 F2d at 197; *Simonson v. International Bank*, 14 NY2d 281, 200 N.E.2d 427, 251 N.Y.S.2d 433 (1964).

New York courts have characterized the "doing business" test as a "simple pragmatic one" and have focused on a variety of factors in making the determination. *Bryant v. Finnish Nat'l Airline*, 15 NY2d 426, 208 N.E.2d 439, 260 N.Y.S.2d 625 (1965). Among the factors considered by the courts are the existence of an office in New York, the solicitation of business in the state, the presence of bank accounts and other property in the state, and the presence of employees or agents in the state. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F2d 55, 58 (2d Cir 1985). In addition, the courts consider whether the corporation is licensed or authorized to do business in New York, and whether it has a

New York telephone listing or mailing address. *Oostdyk v. British Air Tours, Ltd.*, 424 FSupp 807, 813-4 (SDNY 1976). "The Court must ... analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'" *Landoil Resources, supra.*,918 F2d at 1043 (*quoting* Weinstein, Korn & Miller, New York Civil Practice, ¶ 301.16, at 3-32).

Although Defendant has gone to great lengths in arguing that its contacts with New York are minimal, it appears to be less than forth coming in that regard.  One reading Mr. Klein's declaration might get the sense that Mr. Sollinger's visit to the Zuckermans in New York was a unique and/or isolated incident, however, according to Mrs. Zuckerman that appears to be far from the case.  Not only did the defendant's camp director personally travel to New York to visit with the Zuckermans, ***he appears to have done the same for every New York camper that the Zuckermans know of***!  The purpose of these meetings was not only solicitation, but also part of an overall public relations effort, ensuring that the campers and their families felt that they were part of the Camp Laurel extended family.  Although conveniently left unmentioned by defendant's president, there is ample evidence to suggest that this procedure of voluntary in-state personal meetings was followed by the defendant for all New York resident campers[4].  This is exactly the continual, permanent and substantial activity in New York required by the above cited statutory and case law necessary to invoke New York jurisdiction over this defendant.  Where a forum seeks to assert specific jurisdiction over an out-of-state defendant Due Process is satisfied if the defendant has "purposefully directed" his

---

[4]  As earlier mentioned, plaintiffs are, at this early stage of the litigation, entitled to the benefit of all doubt with respect to factual statements (*see Landoil, supra.*).  In the event defendant disputes these facts, the plaintiffs respectfully request the Court order a factual  hearing pursuant to Rule 12.

activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 US 462, 105 SCt 2174, 85 LEd2d 528 (1985). It is precisely this conduct that also distinguishes each and every case cited by the defendant in support of its Rule 12(b) motion; not one of the cited cases involved continual, voluntary visitation to the forum state, by managerial level employees, as an essential course of conduct of the defendant's business, for the purpose of promoting its existing business, to solicit new business, and to ensure that this prospective business would be consistent with the nature and type of business the defendant wanted:

In *Okin v. Jiminy Peak, Inc.*, 1995 WL 116277 (EDNY 1995), the defendant ski resort operator had insufficient solicitation activities in New York to justify the exercise of personal jurisdiction because these activities were found to be "sporadic and are not carried out from a permanent location in the state or by its agents or employees in the state." *Ibid*. This is substantively different from this defendant's activities, wherein every New York state camper was personally visited in-state by management level employees. In the same regard, *Wisselman v. Mount Snow, Ltd.*, 524 FSupp 78 (EDNY 1981), a case involving a Vermont ski resort visited by a New York state resident, is factually dissimilar and distinguishable;

In *Ross v. Colorado Outward Bound School, Inc.*, 603 FSupp 306 (WDNY 1985), the defendant had virtually no ties to the forum jurisdiction and is therefore clearly not relevant to the analysis of the issues raised in this case;

11

In *Diskin v. Starck*, 538 FSupp 877 (EDNY 1982), the sum total of the defendant's contacts with the forum state "is that once a year they purchased a $100 advertisement for their camp in a newspaper assertedly printed, published and distributed in New York. Aside from that, they have not transported campers directly from the State to Vermont ..." *Ibid*, 538 FSupp at 880;

Even if, for argument's sake, the defendant's contacts with New York did not rise to the "doing business" standard required by CPLR §301, it certainly did meet or exceed the lesser "transacting business" standard. New York State's long-arm jurisdiction statute, CPLR § 302, provides *inter alia,*

> (a) <u>Acts which are the basis of jurisdiction.</u> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or ...
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or ...

Subsection [a][3] requires that the injury giving rise to the plaintiffs' claim must occur within the state, *Diskin v. Starck*, 538 FSupp 877 (SDNY 1982). Since this essential predicate is missing in the case at bar, the subsection is admittedly inapplicable. However, subdivision [a][1] requires that the defendant merely "transact" business in the

12

state, so long as there is a direct relationship between the cause of action and the in state

conduct. *Fort Knox Music, Inc. v. Baptiste*, 203 F3f 193, 196 (2d Cir 2000); *Credit*

*Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F3d 151, 153 (2d Cir 1999). The

"transacts business" standard under CPLR 302[a][1] requires a considerably lesser

showing of contacts with New York that the "doing business" standard of CPLR 301.

*Bialek v. Racal-Milgo, Inc.*, 545 FSupp 25 (SDNY 1982); *Ross v. Colorado Outbound*

*School, Inc., supra.* There is a clear relationship herein between the defendant's

transaction of business in New York, above and beyond mere solicitation; *i.e.*, the in-state

face-to-face meeting was critical to the plaintiffs' decision to attend defendant' camp in

the first instance, the contract was executed in New York, and the camp's duty of care

commenced in New York when its staff took charge over the infant in New York [*see, Cf,*

*Gelfand v. Tanner Motor Tours, Ltd.*, 339 F2d 317, *on remand*, 385 F2d 116 (2d Cir

1967), *cert denied,* 390 US 996, 88 SCt 1198, 20 LE2d 95 (1968), "It cannot even be said

that the duty arose in New York, for that duty did not finally arise until plaintiffs boarded

defendants' bus in Las Vegas"). Defendant, cognizant of the lesser "transacting

business" standard, seeks to avoid the reach of New York's long-arm statute by arguing

that the incident occurred during the fourth summer Samantha attended camp, hence

there lacks a relation between the initial in-state contact:

> The visit was for describing to Samantha and her parents what the next summer's
> camping experience would entail. No representative of Camp Laurel visited the
> Zuckermans after the initial visit. The accident at issue occurred during the fourth
> summer she attended the camp. Clearly, the accident did not arise from the
> alleged solicitation of business in New York before Samantha's first summer at
> Camp Laurel. The Zuckermans made their own choice as to whether to enroll
> Samantha at Camp Laurel for each of the four summers she camped there.[5]

---

[5] Defendant's Memorandum of Law, p14.

13

This Court should see through this thin attempt by the defendant to distance itself from its New York activities. The decisions to send Samantha to defendant's camp initially and thereafter on succeeding years are obviously inextricably intertwined. Defendant's personal involvement did not end on the initial summer camp stay. Mr. Sollinger's visit was an important factor not only for the decision to attend defendant's camp initially, but also for the follow up stays. Defendant's argument is the equivalent of saying that Mr. Sollinger's promotion of his camp and his representations regarding its safety during this visit were only reliable for the first stay, an utterly ridiculous position. Even if that were so, defendant has no answer for the fact that it voluntarily entered in New York each and every year, including the year of this injury, to take supervision and control of its infant charges and thereafter to return them to the State. In short, there is every reason to conclude that the defendant, by its own course of conduct, has subjected itself to personal jurisdiction in New York.

*Point III: Venue and Transfer of Venue; The Court should maintain venue in the Southern District of New York.*

28 USC § 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provide by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State ..., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Further § 1391(c) states that, "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

14

Thus, for corporate defendants, § 1391(c) equates jurisdiction with venue. *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 FSupp2d 176, 182 (EDNY 2004); *Cicalo v. Harrah's Operating Company*, 2008 WL 1847665 (SDNY 2008). Since Camp Laurel is subject to the personal jurisdiction of New York, venue in the within Court is appropriate and the Court should resist any motion for a change of venue.

A transfer pursuant to 28 USC § 1404(a) should only be made "[f]or the convenience of parties and witnesses", or "in the interest of justice". The decision to transfer an action lies within the discretion of the Court. *See Minnette v. Time Warner*, 997 F2d 1023, 1027 (2nd Cir 1993). The plaintiff's choice of forum is entitled to substantial weight. *See Okin, supra*. As stated in Mrs. Zuckerman's declaration, transfer to Maine will significantly inconvenience not only the plaintiffs, but also non-party witnesses. The eye witness to the occurrence and injury is a resident of Greenwich, Connecticut and would be greatly inconvenienced if force to travel to Maine rather than Manhattan. Furthermore, all of plaintiff's treating medical providers would be forced to give up their respective practices in order to travel to Maine, rather than to testify locally. Finally, even the defendants would suffer little inconvenience, as its principals reside far from Maine, and significantly closer to Manhattan. Thus, this is not a case where transfer "would merely shift the inconvenience from one party to the other". *DeLuxe Game Corp. v. Wonder Products Co.*, 166 FSupp 56 (SDNY 1958); *Wisselman v. Mount Snow, Ltd.*, *supra*.

## Conclusion:

Defendant's choice of law and forum clauses should not be enforced as they violate New York's consumer protection laws. The defendant is subject to personal jurisdiction in New York under the "doing business" standard of CPLR § 301 and/or the

"transacting business" standard of CPLR § 302[a][1] and the Court should not transfer venue to Maine.

Dated: Lynbrook, New York
      June 13, 2008

                                        Respectfully submitted,

                                        s/ Howard J. Stern
                                        Howard J. Stern (HS-7043)
                                        WERNER, ZAROFF, SLOTNICK, STERN & ASHKENAZY, LLP
                                        Attorney for Plaintiffs
                                        360 Merrick Road
                                        Lynbrook, New York  11563
                                        Telephone: (516) 568-1850
                                        Facsimile:  (516) 825-2599
                                        E-mail: hstern@wzssa.com

16