UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
SAMANTHA ZUCKERMAN, an infant,              )
by her Parent and Natural Guardian          )
ROBERTA ZUCKERMAN,                          )
and ROBERTA ZUCKERMAN,                      )
                              plaintiff,     )        No. 08 Civ. 3913 (NRB) (KNF) ECF
v.                                          )
                                            )
CAMP LAUREL,                                )
                              defendant.     )
_____)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR
TO DISMISS BECAUSE OF LACK OF PERSONAL JURISDICTION**

## Table of Contents

section                                                                                    page

1      Because the contract specifies that Maine law applies, the
       New York statute on evidence that prescribes
       a minimum font size for consumer contracts
       does not apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

2.     The contacts the plaintiffs assert that Camp Laurel
       has with New York are no greater than the contacts
       that the camps and ski resorts had with New York
       in the line of cases Camp Laurel cited that hold that
       those contacts are inadequate to support jurisdiction
       under C.P.L.R. §§ 301 and 302(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

       a.     The plaintiffs have failed to show that
              Camp Laurel was "doing business" in
              New York so as to be subject to jurisdiction
              under C.P.L.R. § 301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       b.     The plaintiffs have failed to show that Camp Laurel
              was "transacting business" in New York so as to
              be subject to jurisdiction under C.P.L.R. § 302(1)(a). . . . . . 6

3.     The plaintiffs claim that transfer to the District of Maine
       would be inconvenient, but they agreed that Maine would be
       the forum, Samantha attended camp there for four consecutive
       summers, and her parents visited her there each summer. . . . . . . . . . . . . . 9

4.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Camp Laurel submits this Reply to the plaintiffs' June 13, 2008 opposition to its Motion to Dismiss or, in the Alternative, to Transfer under 28 U.S.C. § 1404(a).

1.    **Because the contract specifies that Maine law applies, the New York statute on evidence that prescribes a minimum font size for consumer contracts does not apply.**

The plaintiffs concede that forum clauses are fully enforceable, but they try to evade the enforceability of Camp Laurel's forum clause specifying Maine as the exclusive forum by arguing that a New York statute on evidence applies. The fact that the contract specifies that Maine law applies to its interpretation makes the New York statute completely irrelevant.

Roberta Zuckerman signed Camp Laurel's enrollment form just below a line stating that she had read and agreed to the short contract. The contract required any lawsuit to be filed in Maine and stated that it would be construed under Maine law. Klein Decl. ¶ 5 & Exh. A to it.

Roberta Zuckerman does not state that she could not read or understand the contract. She states that the contract was "almost unreadable." Zuckerman Decl. ¶ 6. This is an admission that it was readable. Further, she never called Camp Laurel to state that she could not read it, did not understand it, or did not agree to its terms. Klein Reply Decl. ¶ 3. Indeed, no parent has ever told Camp Laurel that he or she could not read the contract or would not agree to it. Id.

The forum clause is fully enforceable, and Maine law applies to the interpretation of the entire contract. The plaintiffs simply ignore Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007), in which the Second Circuit held that where there is a choice-of-law clause as well as a forum clause, the interpretation of the forum clause is governed by the law chosen to govern the interpretation of the contract as a whole. Id. at 386. See also Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp. 2d 457, 466 n.8 (S.D.N.Y. 2004) (Conners, J.) (choice-of-law clause made C.P.L.R. § 4544 irrelevant).

The plaintiffs' desperate assertion that C.P.L.R. § 4544 applies is unavailing not only because the contract states that Maine law applies but also because it is a procedural, evidentiary rule that does not apply in this federal court. Of course, a federal court applies the substantive rules of the state in which it is sitting, but it applies federal procedural rules. Mickle v. Christie's, Inc., 214 F. Supp. 2d 430, 432 (S.D.N.Y. 2002) (Marrero, J.). As Judge Marrero held:

> [T]he Court considers CPLR § 4544, as the statute itself specifies, to be a rule of evidence detailing face type standards that the form of certain printed contracts must adhere to in order to be received in evidence at any trial, hearing or proceeding. As a procedural rule of evidence rather than a substantive requirement, CPLR § 4544 is not applicable as binding law in a federal court sitting in diversity. *See* Fed. R. Evid. 101; *Erie v. Tompkins,* 304 U.S. [64], at 64 [,82 L.Ed. 1188, 58 S. Ct. 817 (1938)]; *see also Lerner v. Karageorgis,* 66 N.Y.2d 479, 488 N.E.2d 824, 826, 497 N.Y.S.2d 894 (N.Y. 1985) (noting that a state court may not limit substantive rights by applying its own outcome-determinative procedural rules, the court stated that "CPLR 4544 . . . is a rule of evidence" which may not be employed to nullify a contractual right enforceable under federal law); *Jocar Realty Co. v. Galas,* 176 Misc. 2d 534, 673 N.Y.S.2d 836, 839 (N.Y. Civ. Ct. 1998) (noting that "CPLR 4544 is a statutory rule of evidence. . . . It does not declare small-type consumer contracts or residential leases absolutely void or unenforceable.")

Id. at 432.

The plaintiffs cite Filipazzo v. Garden State Brickface, 120 A.D.2d 663, 502 N.Y.S.2d 258 2d Dep't 1986), in which the court held that an arbitration agreement "*might not be* enforceable pursuant to CPLR 4544" because it was in small print. Id. at 666, 502 N.Y.S.2d at 260 (italics added). But Filipazzo was not a federal court case, and, as quoted in Mickle, the New York Court of Appeals had held a year earlier in Lerner v. Karageorgis that § 4454 is a rule of evidence that does not restrict federal law. Further, Filipazzo did not involve a contract stating that it must be interpreted under the law of a state other than New York. Section 4544 simply

2

does not apply to a contract that contains a clause stating that another state's law will apply.

Phillips, 494 F.3d at 386; Kurz, 319 F. Supp. 2d at 466 n.8.

The plaintiffs cannot now disavow the law Roberta Zuckerman agreed would apply. And they cannot insist that a New York law meant to ensure that contracts are legible renders unenforceable as unreadable an agreement Roberta admits she read and understood.[1]

**2.    The contacts the plaintiffs assert that Camp Laurel has with New York are no greater than the contacts that the camps and ski resorts had with New York in the line of cases Camp Laurel cited that hold that those contacts are inadequate to support jurisdiction under C.P.L.R. §§ 301 and 302(a)(1).**

The plaintiffs fail to meet their burden of showing that Camp Laurel is subject to personal jurisdiction in New York. They fail to cite a single case holding that a foreign company is subject to personal jurisdiction in New York under facts similar to those in this case. They fail to distinguish the cases Camp Laurel cited that are precisely on point. These cases hold that if an out-of-state provider of recreational services, such as a camp or ski resort, is sued in New York for an injury to a New York resident at its out-of-state facility, New York courts lack jurisdiction over it even if the defendant repeatedly solicits business in New York by advertising here and sending representatives here to meet with clients and prospective clients, and even if it makes substantial revenue from New York clients. See, e.g., Okin v. Jiminy Peak, Inc., 1995 U.S. Dist. LEXIS 4040 (E.D.N.Y. Feb. 28, 1995) (ski injury; resort advertised on New York radio stations, in New York print media, and on billboards here, sent representatives here for promotional

---

[1]The reason courts universally enforce forum and choice-of-law clauses applies here: they allow a business, including especially those like Camp Laurel that draw customers from many states, to plan knowing what law will apply and where the forum will be. Further, it is only natural that a case be conducted in the state in which the camp is located and where accidents or other incidents involving campers are most likely to occur.

activities, and sold lift tickets here); <u>Wisselman v. Mount Snow Ltd.</u>, 524 F. Supp. 78 (E.D.N.Y. 1982) (ski injury; resort regularly advertised in New York and sent representatives here for ski shows, but had no office here and no employees stationed here); <u>Sedig v. Okemo Mountain</u>, 205 A.D.2d 709, 612 N.Y.S.2d 643 (2d Dep't 1994) (same).

The plaintiffs try to evade these dispositive cases by asserting that Camp Laurel's contacts with New York were greater than those of the providers of recreational services in these cases. They assert that these cases did not involve "continual, voluntary visitation to the forum state, . . . for the purpose of promoting its existing business, to solicit new business, and to ensure that this prospective business would be consistent with the nature and type of business the defendant wanted." Opposition, p. 11. This merely describes solicitation in various ways to attempt to make Camp Laurel's contacts with New York appear to be more than mere solicitation. But those contacts are mere solicitation, which is insufficient to confer jurisdiction on a New York court.

The plaintiffs argue that Jeremy Sollinger of Camp Laurel visited them "prior to [their] final decision" to send Samantha to Camp Laurel. Zuckerman Decl. ¶ 3. They do not deny that no one from Camp Laurel visited them after the initial visit. <u>Id.</u> Samantha's accident occurred during the fourth summer she attended the camp, in July 2006. <u>Id.</u> The visit in 2002 had nothing to do with the Zuckermans' decision to apply for admission for Samantha for the following three summers. By the time of the application for the final session, Samantha had already attended the camp for three years and her parents had visited her during parents' weekend in July of each of those years. <u>Id.</u> ¶ 10. The plaintiffs' decision to apply for the summer of 2006 was obviously

4

based on their own favorable experience with Camp Laurel, not on Sollinger's September 2002 visit.

   **a.**  **The plaintiffs have failed to show that Camp Laurel was "doing business" in New York so as to be subject to jurisdiction under C.P.L.R. § 301.**

   To try to meet the requirement for general jurisdiction under CPLR § 301 that a defendant's contact be "continuous," the plaintiffs assert that Camp Laurel appears to visit every camper's family because they believe it visited the families of several of Samantha's friends. This is part hearsay and predominantly unbridled speculation.  In any event, Camp Laurel does not visit the family of every camper.  See Klein Reply Decl. ¶ 6.  Rather, it will visit a family only if there is a question about whether Camp Laurel is appropriate for the child.  Id.

   In any event, New York law is clear that mere solicitation of business is insufficient to support jurisdiction, even when the defendant sends employees to New York to solicit the business and the solicitation results in contracts being signed in New York or tickets sold there. Okin, 1995 U.S. Dist. LEXIS 4040, *11-*12; Wisselman, 524 F. Supp. at 79-80; Sedig, 204 A.D.2d at 710, 612 N.Y.S.2d at 644.  Camp Laurel is not subject to jurisdiction under C.P.L.R. § 301 because its contacts with New York are not continuous, are not carried on from a permanent location in New York, see Okin, 1995 U.S. Dist. LEXIS 4040, *14, and Camp Laurel does not have any additional financial or commercial dealings in New York, Klein Decl. ¶ 11; Klein Reply Decl. ¶ 7, that would satisfy the "plus" requirement for solicitation.  Okin at *14.

   Okin is on point.  The plaintiff was injured while skiing at a Massachusetts ski resort. The resort sent its representatives to New York for promotional services; owned land in New York; sold coupons in New York ski shops that could be redeemed for tickets at the resort, advertised on radio stations and television stations, in print media, and on billboards in New

York; mailed promotional literature to groups and persons in New York; and distributed brochures here through an independent distribution service.  Id. at *11.  The court held that these solicitation efforts were not substantial enough to constitute "doing business" under § 301, even though they were aimed at attracting New York customers and even though the resort may have relied on New York customers for a substantial part of its business, because the activities were occasional and not carried out from a permanent location in the state or by any employees or agents it had in the state.  Id. at *13-*14.

Similarly, as the plaintiffs concede, Camp Laurel has no employees stationed in New York, no office in New York, and no bank accounts in New York.  Klein Decl. ¶ 11.  As a result, it has no "continuous" contacts with New York.  As Okin, Wisselman, and Sedig, make clear, the fact that a foreign provider of recreational services enters New York, even repeatedly or extensively, does not mean it has continuous contacts with New York.  The "solicitation plus" rule requires additional financial or commercial dealings to support jurisdiction here under a "doing business" theory for  § 301.  Okin, 1995 U.S. Dist. LEXIS 4040, *14.  The plaintiffs' attempt to convert Sollinger's single visit to the Zuckermans from Camp Laurel's New Jersey office--four years before the accident--into continuous solicitation from a permanent location in New York simply does not support jurisdiction under § 301.

**b.    The plaintiffs have failed to show that Camp Laurel was "transacting business" in New York so as to be subject to jurisdiction under C.P.L.R. § 302(1)(a).**

The mere solicitation of business in New York and the obtaining of sales and contracts in New York as a result of the solicitation is insufficient to meet the "transacting business" requirement of the plaintiffs' alternative basis for jurisdiction, subsection (a)(1) of the specific

jurisdiction statute, C.P.L.R. § 302.  Okin, 1995 U.S. Dist. LEXIS 4040, *16-*18; Wisselman, 524 F. Supp. at 89.  Courts hold consistently that injuries resulting from recreational activities held outside New York but advertised within this state bear "too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the state to warrant a conclusion that the injuries arose from the in-state activity." Okin, 1995 U.S. Dist. LEXIS 4040, *17-*18.  See also Sedig, 204 A.D.2d at 710-11, 612 N.Y.S.2d at 645; Wisselman, 524 F. Supp. at 80.

The plaintiffs allege that Samantha was injured because Camp Laurel was negligent in tightening the saddle of her horse.  Any duty of care relating to tightening the saddle did not arise in New York but in Maine.  Wisselman, 524 F. Supp. at 80.  The plaintiffs' claim is too remote from Camp Laurel's allegedly transacting business in New York by soliciting them to enter into a contract four years earlier to support jurisdiction under § 302(1)(1).  Id.  Because Camp Laurel transacted business in New York and, at most, merely solicited business here, there is no basis for jurisdiction under § 302(a)(1).  Id.

The plaintiffs allege that the contract was executed in New York.  But Camp Laurel reserved the right to accept or reject any application, and it would do so at its Maine or New Jersey offices.  Klein Reply Decl. ¶ 5.  At any rate, even when a foreign provider of recreational services solicits sales in New York and obtains contracts in New York, an injury at its out-of-state facility is deemed too remote from the provider's solicitation activities to support jurisdiction under § 302(a)(1).  Okin, 1995 U.S. Dist. LEXIS 4040, *17-*18; Sedig, 204 A.D.2d at 710-11, 612 N.Y.S.2d at 645; Wisselman, 524 F. Supp. at 80.

The plaintiffs further attempt to distinguish these cases by asserting that unlike them, Camp Laurel enters New York and "takes charge" of its campers. Camp Laurel does offer optional transportation from New York for families who choose not to take their children to the camp in Maine themselves. It arranges for an independent motorcoach company, Northeast Charter and Tours, of Lewiston, Maine, to provide motorcoach transportation. Klein Reply Decl. ¶ 8. For families that choose to send their children to Maine by airline, Camp Laurel arranges for flights on independent airlines, such as Delta Airlines. Id. Camp Laurel has never owned, operated, managed or controlled Northeast Charter and Tours or any airline and therefore could not be liable for any acts or omissions on their part. Id.[2] Camp Laurel had no duty to protect children on an independent carrier,[3] but even if it had, the plaintiffs have cited no case that would support the notion that meeting a child in New York and traveling with her to Maine on an independently owned conveyance supports jurisdiction for an accident that occurred in another state and was wholly unrelated to the transportation from New York.

---

[2]In this regard, a camp is like a tour operator, which is entitled to summary judgment on a claim based on injuries a tour participant suffers on an independently owned and operated motorcoach. See, e.g., Sachs v. TWA Getaway Vacations, 125 F. Supp. 2d 1368, 1373-75 (S.D. Fla. 2000) (fall on steps of coach); Aronov v. Bruins Transp., Inc., 742 N.Y.S.2d 389, 390 (App. Div. 2002)(nine persons killed in coach crash; "Where tour participants are transported by an independent contractor, the tour operator is not responsible for an accident which occurs due to the negligence of the independent contractor."); Lowy v. Heimann's Bus Tours, Inc., 658 N.Y.S.2d 452, 453 (App. Div. 1997)(bus crash); Dorkin v. American Express Co., 345 N.Y.S.2d 891 (Sup. Ct., Spec. Term 1973), aff'd, 351 N.Y.S.2d 190, 192 (App. Div. 1974)(fall on bus).

[3]Like a tour operator with respect to tour participants, a camp arranging transportation to its facility is not in a special relationship with campers such that it has a duty to protect them while they are aboard an independently owned and operated conveyance. See, e.g., Sachs, 125 F. Supp. 2d at 1374 (fall on steps of coach); Stafford v. Intrav, Inc., 841 F. Supp. 284, 287 (E.D. Mo. 1993), aff'd, 16 F.3d 1228 (8th Cir. 1984)(fall on cruise vessel).

8

3.    **The plaintiffs claim that transfer to the District of Maine would be inconvenient, but they agreed that Maine would be the forum, Samantha attended camp there for four <u>consecutive summers, and her parents visited her there each summer.</u>**

Presumably in response to Camp Laurel's alternative request to transfer under § 1404(a), not its motion to dismiss based on the forum clause, the plaintiffs argue that Maine is an inconvenient forum.  But they agreed that Maine will be the exclusive forum and that Maine law will apply.  They sent Samantha to the camp in Maine each summer from 2003 until 2006 and visited her there each of those four summers.  Klein Decl. ¶ 10.  <u>See</u> <u>Schechter v. Tauck Tours, Inc.</u>, 17 F. Supp. 2d 255, 260 (S.D.N.Y. 1998) (fall during tour in Hawaii; granting tour operator's motion to transfer to Hawaii; noting that although plaintiffs complained that Hawaii was inconvenient, they had chosen to travel there).[4]

The plaintiffs cite only one witness for them, a child whom they allege saw Samantha fall.  Her testimony about whether the saddle was cinched properly, if competent, can be

---

[4]<u>See also</u> <u>Effron v. Sun Line Cruises</u>, 67 F.3d 7, 11 (2d Cir. 1995) (American plaintiff held bound by forum clause specifying Greece as the forum; rejecting her claim that cost of travel to Greece and transporting witnesses there would deprive her of her day in court ); <u>Irwin v. World Wildlife Fund, Inc.</u>, 448 F. Supp. 2d 29, 33 (D. Md. 2006) (granting tour operator's motion to dismiss on grounds of *forum non conveniens* on claim based on boating accident in Gabon; rejecting plaintiff's claim that because of her injuries, in traveling to Gabon, she would risk medical complications, even death); <u>Heinz v. Grand Circle Travel</u>, 329 F. Supp. 2d 896 (W.D. Ky. 2004) (enforcing forum clause; rejecting passenger's claim that her age and physical limitations would prevent her from pursing her case in specified forum); <u>Powell v. Carnival Cruise Lines</u>, 2005 U.S. Dist. LEXIS 29982 (E.D. Cal. Nov. 17, 2005) (same); <u>Gianocostas v. Interface Group-Massachusetts, Inc.</u>, 450 Mass. 715, 881 N.E.2d 134 (2008), <u>reh'g denied</u> (Apr. 1 4, 2008) (wrongful death claim based on alleged misrepresentation by tour operator about quality of medical care plaintiffs' decedent was receiving in Dominican Republic; granting tour operator's motion to dismiss on grounds of *forum non conveniens* in favor of D.R., even though plaintiffs and defendant were from Massachusetts, because key evidence and witnesses were in D.R.).

presented by videotape or deposition, if necessary, as can the testimony of Samantha's health care providers from Manhattan.[5]

The plaintiffs go so far as to assert that Maine would be less convenient for Camp Laurel. But they ignore the fact that Camp Laurel cannot present an adequate defense if the trial is not held in Maine. The plaintiffs' action is based on the allegation that Camp Laurel was negligent because its employee failed to properly cinch the saddle on Samantha's horse. The woman who cinched the saddle on the horse is the head of Camp Laurel's riding program, is from central New Hampshire, an easy drive to Maine, and would not willingly go to New York   Klein Reply Decl. ¶ 9.a. The accident occurred in Maine, Maine law will apply to this action, as the contract specified, and the horse, the saddle, the owner of the horse and saddle, and the hospital at which Samantha was first treated are all in Maine. Id. ¶¶ 9-10; Klein Decl. ¶ 9. Finally, Camp Laurel's witnesses, Keith Klein and Jeremy Sollinger, prefer that the proceedings be in Maine because they want to ensure that Camp Laurel can properly defend itself and because, at least during the late spring and summer, they want to minimize time they are away from the camp. Id. ¶ 11.

## 4.  Conclusion

Camp Laurel's motion should be granted and the case dismissed or, in the alternative, transferred to the District of Maine.

---

[5]The plaintiffs cannot reasonably argue that the cost of pursuing their lawsuit in Maine would be prohibitive. They paid tuition at Camp Laurel for four years–approximately $9,700 in 2006, $9,300 in 2005, $8,900 in 2004, and $8,500 in 2003. Klein Reply Decl. ¶ 12. See Effron, 67 F.3d at 11 (plaintiff could not complain about cost of litigating in Greece since her action was based on an expensive cruise).

Dated:  June 25, 2008                    Respectfully submitted,
                                         the defendant,
                                         COASTAL CAMPS, INC., d/b/a CAMP LAUREL,
                                         by its attorneys,


                                         /s/_____
                                         Rodney E. Gould, Esq. (RG-9871)
                                         Email:  rgould@rhglaw.com
                                         Robert C. Mueller, Esq. (RM-1882)
                                         Email:  rmueller@rhglaw.com
                                         RUBIN, HAY & GOULD, P.C.
                                         205 Newbury Street
                                         P.O. Box 786
                                         Framingham, MA  01701-0786
                                         telephone:  (508) 875-5222
                                         facsimile:  (508) 879-6803


<u>Certificate of Service</u>

        I, Rodney E. Gould, counsel for the defendant, hereby certify that on this 25th day of June 2008, I filed through the ECF system the foregoing Reply in Support of Defendant's Motion to Dismiss or, in the Alternative, to Transfer under 28 U.S.C. § 1404(a) or to Dismiss Because of Lack of Personal Jurisdiction, and that I also served it on the plaintiffs by mailing a copy of it, by U.S. first-class mail, postage prepaid, to their counsel of record:

                Allan R. Zaroff, Esq.
                Werner, Zaroff, Slotnick, Stern & Ashkenazy PLLP
                360 Merrick Road
                Lynbrook, NY 11563


                                         /s/_____
                                         Rodney E. Gould

11