UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
SAMANTHA ZUCKERMAN, an infant,   )
by her Parent and Natural Guardian   )
ROBERTA ZUCKERMAN,   )
and ROBERTA ZUCKERMAN,   )
                           plaintiff,   )     No. 08 Civ. 3913 (NRB) (KNF)
v.   )
   )
CAMP LAUREL,   )
                           defendant.   )
_____)

**REPLY DECLARATION OF KEITH M. KLEIN
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR
TO DISMISS BECAUSE OF LACK OF PERSONAL JURISDICTION**

I, Keith M. Klein, declare and state of my personal knowledge as follows:

1. I am president and sole shareholder of Coastal Camps, Inc., d/b/a Camp Laurel ("Camp Laurel").

2. I submit this declaration in support of Camp Laurel's reply to the plaintiffs' opposition to its motion to dismiss on the basis of the forum clause in its contract with the Zuckermans or, in the alternative, to transfer the case to the United States District Court for the District of Maine or to dismiss for lack of personal jurisdiction.

3. Roberta Zuckerman signed both Camp Laurel's 2006 re-enrollment form (Exhibit A to my original declaration) and 2005 re-enrollment forms (Exhibit B to my original declaration). Both contained the same clause, in the same font size, specifying that Maine would be the sole forum for any lawsuit against Camp Laurel and that Maine law would apply.  She never called or wrote to Camp Laurel to state that she could not read the contract containing the forum and

choice-of-law clauses, to state that she could not understand the contract or those two clauses, or to state that she did not agree to the contract or those two clauses. In fact, no parent has ever told Camp Laurel that he or she could not read the contract, did not understand it, or would not agree to it.

     4. Camp Laurel mails enrollment and re-enrollment forms (that is, application forms) from our office in Mt. Vernon, Maine.

     5. Camp Laurel reserves the right to accept or deny enrollment and re-enrollment forms. We make the decision to do so in our office in Maine or in our winter office in New Jersey. For example, we may deny an application if we are over-subscribed, if the application arrives after our deadline, or if we feel that the camp would not be appropriate for the child.

     6. Camp Laurel does not visit the family of each prospective camper. We do so only if there is a question about whether the camp would be appropriate for the child.

     7. Camp Laurel mails applications and promotional materials such as DVDs to our previous campers, persons referred by our previous campers, or to other persons who have requested them, including to persons in New York. But we have no financial or commercial dealings in New York. We have no bank accounts or investment accounts there, no office there, and no employees stationed there. We own no real estate there, and we own no businesses there.

     8. Camp Laurel offers optional transportation from New York for families who choose not to take their children to the camp in Maine themselves. It arranges for an independent motorcoach company, Northeast Charter and Tours, of Lewiston, Maine, to provide motorcoach transportation. For families who choose to send their children to Maine by air, Camp Laurel arranges for flights on airlines, including Delta Airlines. Camp Laurel has never owned,

operated, managed, controlled, or had a financial interest in Northeast Charter and Tours or any airline.

9. Key witnesses whom Camp Laurel would need to defend this lawsuit reside in Maine, New Hampshire, Michigan, and New Jersey. Even those who reside elsewhere in the off-season reside at the camp in the summer. They include:

    a. Pamela M. Payson, Equestrian Director for Camp Laurel. Camp Laurel employs her from about June 10 until August 15 each summer. Pam cinched the saddle on Tinkerbell, the horse from which Samantha fell, before Samantha mounted the horse at the time of the accident. She will testify about her cinching the saddle, the instruction that Camp Laurel's Equestrian Program had provided Samantha before the accident, the training Camp Laurel provides its instructors, how the accident happened, the aid the staff gave Samantha just after the accident, Tinkerbell's temperament, and her experience with Tinkerbell. In the off-season, Pam is Head Coach of Equestrian at Colby-Sawyer College in New London, New Hampshire. She lives at 803 West Road, Bradford, New Hampshire, where she has a farm and her own horses and other animals. She has told me that she would not willingly go to New York because that would mean she would have to be away from her job, her farm, and her animals for an extended time. Maine is a much shorter trip for her than New York would be.

    b. Greta Hemphill is, I believe, an owner of Hemphill's, Inc., 74 Oak Grove Road, North Vassalboro, Maine, which owns Tinkerbell. Greta will testify about the horse's temperament and the condition of the saddle.

    c. Sarah Balmer, Equestrian Instructor for Camp Laurel. Sarah placed the saddle

on Tinkerbell before Samantha's accident and was giving a riding lesson to Samantha when Samantha fell. Sarah was an equestrian instructor at Camp Laurel in the summers of 2006 and 2007. Sarah will testify about her placing the saddle on Tinkerbell, seeing Pam cinch it, the instruction she had given Samantha before the accident, and how the accident happened. Sarah is a student at the University of Michigan in Ann Arbor, and her permanent address is 4375 Pleasant Lake Road, Ann Arbor.

      d. Leslie Doolittle, M.D., of Belgrade Lakes, Maine, was the camp physician. She examined Samantha after the accident before sending her to the emergency room of a local hospital.

      e. I, Keith Klein, am president and sole shareholder of Camp Laurel. I live in Tenafly, New Jersey and am present at the camp from about June 1 until about August 20 each summer. I will also testify about how the staff provided medical treatment to Samantha after the accident; how Camp Laurel hires the Equestrian Director and equestrian instructors; what we knew about the experience of Pam Payson, the Equestrian Director in the summer of 2006, before we hired her; our experience with Pam and the comments we have received from campers and their parents about Pam; what we knew about the experience of Sarah Balmer, the equestrian instructor who was giving Samantha a lesson when she fell, before we hired her; our experience with Sarah and the comments we have received about Sarah from parents and campers; Camp Laurel's safety record for its Equestrian Program; the safety record of Tinkerbell and other horses and saddles owned by Hemphill's, Inc.; and the safety record of Sarah and Pam.

      f. Jeremy Sollinger is Co-Director of Camp Laurel. He will testify that he

received the Camp Laurel–2006 Re-Enrollment form from Roberta Zuckerman and completed the processing of the application. He will testify that Samantha had attended the camp in 2003, 2004, and 2005 as well as in 2006 and that her mother had signed and agreed to the same contract for the summer of 2005. He will also testify about what Samantha's mother, Roberta, stated to him about Samantha's injury and how she claimed it happened. Jeremy lives in Norwood, New Jersey, and is present at Camp Laurel from about June 1 until about August 15 each summer.

10. Tinkerbell is owned by Hemphill's, Inc. and is stabled at Hemphill's in North Vassalboro, Maine in the off-season and at Camp Laurel in the summer. The saddle that the Zuckermans allege was not tightened properly is owned by Hemphill's. I believe it is located at Hemphill's in the off-season and accompanies Tinkerbell to Camp Laurel in the summer.

11. Jeremy Sollinger and I are key employees of Camp Laurel, and Camp Laurel's business would be disrupted severely if we had to travel to New York for the trial or any other proceedings in this lawsuit, especially during the summer months, when camp is in session. Sending our witnesses to New York, housing, feeding, and communicating with them there, and shipping the records of Camp Laurel to New York would be expensive and disruptive to our business. Jeremy Sollinger and I do not mind traveling to Maine for this case because Camp Laurel cannot adequately defend against the Zuckerman's claims if the lawsuit is not in Maine.

12. The Zuckermans paid Camp Laurel's tuition for each of the four years Samantha attended the camp. Tuition was approximately $9,700 in 2006, $9,300 in 2005, $8,900 in 2004, and $8,500 in 2003.

      I declare under the penalty of perjury that the foregoing statements are true and correct. Executed on June ___, 2008.

                                        \s_____
                                          Keith M. Klein

Certificate of Service

I, Rodney E. Gould, counsel for the defendant, hereby certify that on this 25th day of June 2008, I filed through the ECF system the foregoing Reply Declaration of Keith M. Klein in Support of Defendant's Motion to Dismiss or, in the Alternative, to Transfer under 28 U.S.C. § 1404(a) or to Dismiss Because of Lack of Personal Jurisdiction, and that I also served it on the plaintiffs by mailing a copy of it, by U.S. first-class mail, postage prepaid, to their counsel of record:

Allan R. Zaroff, Esq.
Werner, Zaroff, Slotnick, Stern & Ashkenazy PLLP
360 Merrick Road
Lynbrook, NY 11563


/s/_____
Rodney E. Gould